# WHERLAND ELECTRIC COMPANY v. A. C. BURMEISTER.[1]

June 13, 1913.

Nos. 17,993—(151).

**Electricity — contract construed.**

> A contract for the sale and delivery of electric current, providing for the delivery of certain volume thereof at the storage plant or substation of the generating company, at certain specified prices, construed and *held* to obligate the purchaser to pay for such volume of current as should actually be delivered to him, and that whatever loss results from the transmission of the electricity to and the passage through the transformers at the substation must fall upon the seller.

Action in the district court for Redwood county to recover $408.35, overpayments to defendant upon monthly bills for electric current furnished under a written contract. The case was tried before Olsen, J., who made findings of fact and ordered judgment in favor of plaintiff for $314.11. From an order denying defendant's motion for a new trial, he appealed. Affirmed.

*A. R. A. Laudon* and *Frank Clague,* for appellants.

*W. R. Werring, Henry Deutsch* and *Walter S. Whiton,* for respondents.

BROWN, C. J.

Defendant owns and operates an electric generating plant located within the city of Redwood Falls. On December 23, 1909, he entered into a contract with one Werring, by which he agreed to construct on the outskirts of the city a substation for the storage of electricity, and to deliver therefrom to Werring such electric current and energy as should be required by him, to be transmitted over his own wires to his patrons in other neighborhood municipalities. Werring assigned the contract to plaintiff, a corporation. Defendant constructed the substation, and thereafter delivered to plaintiff under

[1] Reported in 141 N. W. 1117.

the Werring contract such volume of electricity as plaintiff required. The contract called for the measurement at the substation, and defendant presented statements for amounts due which, under protest that an improper method of measurement had been adopted, plaintiff paid.

Plaintiff thereafter brought this action to recover an amount which it claims to be an overpayment, brought about by the improper measurement of the electric current delivered. The trial court found the facts in plaintiff's favor and ordered judgment against defendant accordingly. Defendant appealed from an order denying a new trial.

The precise question in controversy is stated in the findings of the trial court substantially as follows: Defendant owns and operates the substation at which he delivers to plaintiff the electricity called for by the contract. Transformers are located at this station, and also a switchboard or device for measuring the current passing through the same. The current comes from the power plant of defendant at a definite voltage, but in passing through the transformers a certain amount of it is lost. The switchboard is placed in position for measuring the current as it enters the station, and defendant charges plaintiff for the quantity so delivered. It is the contention of plaintiff that it is liable under the contract only for such volume of electricity as is actually delivered after its passage through the transformers, while defendant contends that the quantity for which plaintiff is liable is properly measured by the volume delivered from the generating plant to the substation before it passes through the transformers. And, as remarked by the trial court, there is a loss of current at the substation, and the dispute narrows down to the question: Which party must, under the contract, stand the loss?

The trial court applied the general rule that a vendor, who agrees to sell and deliver specific personal property of a certain kind or prepared in a certain way before delivery, must stand any expense or loss incurred by him in preparing the property for delivery, and held that the loss of electricity occasioned by the passage through the transformers at the substation must fall upon defendant. In this

view of the case we concur. Defendant agreed by the contract to sell and deliver to plaintiff a specified volume of electric current. The contract contains no reference to a loss naturally to occur at the substation, and no sufficient reason appears to justify the conclusion that the parties contemplated such loss in entering into the agreement, and that it should be cast upon plaintiff. The contract calls for the payment of electric current delivered at the substation, and upon its face plaintiff can be chargeable with only such volume thereof as is actually delivered and received.

While the contract further calls for the measurement of the current at a switchboard to be placed at the substation, no provision appears therein justifying the conclusion that the parties understood or intended that this measuring device was to be so placed that the current would be measured before entering the transformers. Under the contract, properly construed, it should have been so placed as to measure the actual quantity delivered to plaintiff. It appears from the evidence and findings of the court that it could be placed on the delivery side of the transformers, but that the measurement at that point is attended with extreme danger, not incident to the measurement as the current enters the station. It seems clear that the situation called for some express contract stipulations covering the matter, and the court cannot well say that the general custom of measuring from the low tension side of the station entered into or formed a part of the agreement and understanding of the parties. The record contains no conclusive evidence that the parties discussed the subject of loss of current at the substation, at the time of or before the contract was entered into, and their rights must be measured in the light of the rule of law referred to and the actual stipulations embodied in the written agreement.

Order affirmed.